IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY HERTZIG,

        Petitioner,                2: 09 - cv - 0002 - MCE TJB

    vs.

JAMES YATES,

        Respondent.       <u>ORDER, FINDINGS AND</u>

                                   <u>RECOMMENDATIONS</u>

_____/

## I.  INTRODUCTION

Petitioner is a state prisoner proceeding *pro se* with a Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Following a 2006 jury trial, Petitioner was convicted of five counts of lewd and lascivious acts with a child under the age of 14, one count of unlawful sexual intercourse and ten misdemeanor counts of possession of child pornography.  Petitioner received a sentence of forty years and eight months to life imprisonment.

Petitioner raises several claims in this federal habeas petition; specifically:  (1) the trial court abused its discretion in denying Petitioner's request to withdraw his pro per status which violated his right to counsel ("Claim I"); (2) the trial court violated Petitioner's right to due process, self-representation, meaningful access to the courts and the opportunity to prepare a defense when it failed to provide him with access to CALCRIM jury instructions ("Claim II");

1  (3) the trial court violated Petitioner's due process and fair trial rights when it denied his motion

2  to sever the child molestation and unlawful intercourse charges from the possession of child

3  pornography charges ("Claim III"); and (4) the admission of propensity evidence violated

4  Petitioner's right to due process and equal protection ("Claim IV").  Petitioner requests an order

5  to show cause, the appointment of counsel as well as an evidentiary hearing on his Claims.  For

6  the following reasons, these requests are denied and it is recommended that the habeas petition

7  be denied.

8  ## II.  FACTUAL BACKGROUND[1]

9  > The prosecution presented a chronology portraying a disturbing
   > pattern of defendant's sexual exploitation of young girls.  It began
   > in 1996 when defendant, then 18, put his hand in the shirt of his
   > friend's 14-year-old sister and then down her pants.  She reported
   > the incident to police.

12 > In 1998 defendant's sister, Kelly, [FN1] told his then girlfriend,
   > Debbie, that defendant had touched her breasts and genitals.
   > Debbie also reported the incident.  When interviewed, 10-year-old
   > Kelly told the detective that defendant had licked her private area,
   > placed his finger in her rectum, and "[got] her wet."  She told a
   > nurse practitioner that defendant had ejaculated on her stomach.  A
   > physical examination revealed a healed injury to Kelly's hymen.
   > Not long thereafter Kelly told an interviewer at the Multi-
   > Disciplinary Interview Center that defendant had undressed her,
   > "kissed me down there," touched her "private" with "his hand and
   > his thing," and "made himself pee," and that "white" pee got on her
   > body.  She also reported that on other occasions he used his tongue
   > on her private and put his finger in her bottom.
   > [FN1]  The names of the victims have been changed to protect their
   > privacy.

20 > Defendant denied Kelly's accusations.  Two days after Kelly
   > disclosed the molestations to Debbie, defendant married Debbie in
   > an impromptu exchange of vows in Lake Tahoe.  Defendant and
   > Debbie's first-born daughter, Laura, was born late that year.
   > The marriage was tumultuous.  By 2002 Debbie suspected
   > defendant was having a sexual relationship with Kelly.  When
   > confronted, defendant told Debbie she was crazy and that he would
   > never do anything like that.

---

25  [1]  The factual background is taken from the California Court of Appeal, Third Appellate
District opinion dated October 24, 2007.  Respondent filed this opinion in this Court on June 10,
26  2009 as lodged document number 4 (hereinafter "Slip Op.").

In July 2005 Laura told her mother's friend that her father had touched her vagina and rectum.  Later the same day, she told a police officer that defendant had touched her "pee-pee" and bottom; she described three separate attacks involving the touching of her rectum and vagina, and vaginal intercourse in the bedroom, shower, and on the couch.  An examination revealed a healed hymenal cleft and granulation tissue consistent with a penetrating injury.

In early August 2005, police seized a computer from defendant's residence.  Videos containing images of children engaged in sexual acts were found on the computer.

Kelly gave birth to premature twins in January 2006.  Through DNA testing, the prosecution ascertained that defendant was the father of the twins, one of whom died during defendant's trial.

(Slip Op. at p. 2-4 (footnote omitted).)

### III.  PROCEDURAL HISTORY

Petitioner was charged with:

five counts of committing a lewd and lascivious act with a child under the age of 14 . . . and alleging that the offenses involved two or more victims; unlawful sexual intercourse; and 10 counts of possession of child pornography.

Defendant represented himself at trial but did not testify.  After vigorous cross-examination of the prosecution's witnesses, including Debbie and Laura, defendant argued to the jury that Debbie, with the wrath of a "woman scorned," coached their six-year-old daughter to fabricate the allegations of molestation and loaded pornographic videos onto her laptop computer to deprive him of custody of their four children.  He attacked her credibility, veracity, motives, capacity, and intentions.  Faced with DNA evidence of paternity, he admitted having a sexual relationship with Kelly but denied molesting her when she was nine or his daughter when she was six.

(Slip Op. at p. 4 (internal citations omitted).)  Petitioner was convicted on all counts.  After

sentencing, he appealed to the California Court of Appeal, Third Appellate District.  In his

appeal, Petitioner raised the same claims that he raises in this federal habeas petition amongst

others.  On October 24, 2007, the California Court of Appeal denied Petitioner's claims that he

1  raises in this federal habeas petition in a written opinion.[2]  The California Supreme Court denied

2  the petition for review without discussion on January 30, 2008.  Petitioner filed his federal

3  habeas petition with this Court on January 5, 2009.

4  IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

5  An application for writ of habeas corpus by a person in custody under judgment of a state

6  court can only be granted for violations of the Constitution or laws of the United States.  See 28

7  U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v.

8  Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).

9  Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

10  and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S.

11  320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

12  decided on the merits in the state court proceedings unless the state court's adjudication of the

13  claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

14  clearly established federal law, as determined by the Supreme Court of the United States; or (2)

15  resulted in a decision that was based on an unreasonable determination of the facts in light of the

16  evidence presented in state court.  See 28 U.S.C. 2254(d).

17  If a state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

18  court must conduct a de novo review of a petitioner's habeas claims.  See Delgadillo v.

19  Woodford, 527 F.3d 919, 925 (9th Cir. 2008).  Where a state court provides no reasoning to

20  support its conclusion, a federal habeas court independently reviews the record to determine

21  whether the state court's decision was objectively unreasonable in its application of controlling

22  federal law.  See Musladin v. Lamarque, 555 F.3d 830, 835 (9th Cir. 2009); see also Delgado v.

23  Lewis, 223 F.3d 976, 981-82 (9th Cir. 2000), overruled on other grounds, Lockyer v. Andrande,

24

25  [2] The court reversed nine of the ten counts for possessing child pornography explaining
   that the "defendant violated a provision of the Penal Code by the solitary act of possessing the
   proscribed property . . . . we are not at liberty to fragment a single crime into more than one

26  offense."  (Slip Op. at p. 12.)

4

1   538 U.S. 63 (2003).

2         As a threshold matter, this Court must "first decide what constitutes 'clearly established

3   Federal law, as determined by the Supreme Court of the United States.'"   Lockyer, 538 U.S. at

4   71 (quoting 28 U.S.C. § 2254(d)(1)).   "'[C]learly established federal law' under § 2254(d)(1) is

5   the governing legal principle or principles set forth by the Supreme Court at the time the state

6   court renders its decision.'"   Id.   Under the unreasonable application clause, a federal habeas

7   court making the unreasonable application inquiry should ask whether the state court's

8   application of clearly established federal law was "objectively unreasonable."   See Williams v.

9   Taylor, 529 U.S. 362, 409 (2000).   Thus, "a federal court may not issue the writ simply because

10  the court concludes in its independent judgment that the relevant state court decision applied

11  clearly established federal law erroneously or incorrectly.   Rather, that application must also be

12  unreasonable."   Id. at 411.   Although only Supreme Court law is binding on the states, Ninth

13  Circuit precedent remains relevant persuasive authority in determining whether a state court

14  decision is an objectively unreasonable application of clearly established federal law.   See Clark

15  v. Murphy, 331 F.3d 1062, 1072 (9th Cir. 2003) ("While only the Supreme Court's precedents

16  are binding . . . and only those precedents need be reasonably applied, we may look for guidance

17  to circuit precedents.").

18        The first step in applying AEDPA's standards is to "identify the state court decision that

19  is appropriate for our review."   See Barker v. Fleming, 423 F.3d 1085, 1091 (9th Cir. 2005).

20  When more than one court adjudicated Petitioner's claims, a federal habeas court analyzes the

21  last reasoned decision.   Id. (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).   The last

22  reasoned decision in this case came from the California Court of Appeal.

                          V. PETITIONER'S CLAIMS FOR REVIEW

23

24        A.   Claim I

25        In Claim I, Petitioner asserts that the trial court abused its discretion when it refused his

26  request to withdraw his pro per status after the jury had been impaneled.   The California Court of

                                          5

Appeal analyzed this Claim in its opinion and stated the following:

> It is established that the Sixth Amendment to the United States Constitution gives a criminal defendant the right to counsel as well as the right to represent himself if he knowingly and voluntarily waives his right to counsel. (Faretta v. California (1975) 422 U.S. 806 [45 L.Ed.2d 562.].) It does not, however, provide a constitutional right to change his mind and switch back and forth during trial. (People v. Boulware (1993) 20 Cal.App.4th 1753, 1756.) "[O]nce defendant ha[s] proceeded to trial on a basis of his constitutional right of self-representation, it is thereafter within the sound discretion of the trial court to determine whether such defendant may give up his right of self-representation and have counsel appointed for him." (People v. Elliott (1977) 70 Cal.App.3d 984, 993 (Elliott).)

> Until a week before trial, defendant was represented by the public defender. He then invoked his right to represent himself. The trial court warned him of the pitfalls and dangers of self-representation, counseled him against forsaking his lawyer, and instructed him he would be held to the same standard as any attorney, would not be given special treatment, and would be presumed to know the law necessary to defend himself. Well admonished, defendant knowingly waived his right to counsel and the court had no choice but to grant his request to represent himself. (People v. Smith (1980) 112 Cal.App.3d 37, 48 (Smith).)

> The trial court then heard pretrial motions and conducted three days of voir dire. A jury was impaneled. Before opening statements, defendant asked to have counsel appointed, but he was unwilling to waive his right to a speedy trial and would not accept reappointment of the same public defender. Perplexed, the court remarked that defendant had put both himself and the court "between a hard place and a rock. [¶] On the one hand, you're saying you want your trial within the statutory time period. That means no time waivers. No continuances in this matter. [¶] And on the other hand, you're saying well, I need these things to adequately prepare so I want another attorney."

> Defendant explained that he had not been provided access to the law library or to the telephone to contact an investigator. The court expressed considerable concern that he had not been accorded his pro. per. privileges, even following a call from the court. The court ordered that defendant be allowed to telephone the investigator and assured him the court would follow up and see if the "investigator can come over and see you." Defendant does not assert that he had any further difficulty in securing his pro. per. privileges throughout the trial. He contends, nonetheless, that the court abused its discretion by denying his request to allow him to withdraw his waiver of counsel and to appoint him another lawyer.

In evaluating whether the trial court abused its discretion by denying a defendant's request for a lawyer after he invoked his right of self-representation, California courts consider the following relevant factors: "(1) defendant's prior history in the substitution of counsel and in the desire to change from self-representation to counsel-representation, (2) the reasons set forth for the request, (3) the length and stage of the trial proceedings, (4) disruption or delay which reasonably might be expected to ensue from the granting of such motion, and (5) the likelihood of defendant's effectiveness in defending against the charges if required to continue to act as his own attorney." (Elliott, supra 70 Cal.App.3d at pp. 993-994.) Yet these factors must yield to a more holistic review of the totality of the facts and circumstances as the Supreme Court instructs in People v. Gallego (1990) 52 Ca.3d 115: "'While the consideration of these criteria is obviously relevant and helpful to a trial court in resolving, they are not absolutes, and in the final analysis it is the totality of the facts and circumstances which the trial court must consider in exercising its discretion as to whether or not to permit a defendant to again change his mind regarding representation in midtrial.'" (Id. at p. 164, quoting People v. Smith (1980) 109 Cal.App.3d 476, 484.)

We agree with the trial court that defendant put it between a rock and a hard place. As the court well understood, several factors favored granting defendant's request. There is no indication in this record that defendant had abused his privilege during the course of the proceedings or, as in other cases, changed his mind on multiple occasions. Rather, he asked for counsel when he had difficulty accessing legal materials and the investigator. While the pretrial motions had been litigated and the jury impaneled, the trial itself had not yet begun.

Defendant, however, would not waive time and did not want the same public defender reappointed even if she were available. Thus defendant had an irreconcilable dilemma of his own making. No competent lawyer, as the trial court emphasized, would be willing or able to try such a serious and complex case without adequate time for preparation. Yet because defendant remained unwilling to request or accept a continuance, he deprived himself of a competent replacement.

It was indeed very likely that he could effectively defend against the charges by continuing to act as his own attorney, and the record of the ensuing proceedings attests to his effectiveness. His cross-examination of witnesses was appropriately gentle when confronting his young daughter and appropriately searing when confronting his ex-wife, who he asserted was the mastermind behind the false charges. His argument was cogent. He highlighted the weaknesses in the prosecution's case, challenged the veracity of the prosecution's witnesses, and offered a viable alternative to the prosecution's theory. Even before trial began and

he had the opportunity to demonstrate his legal prowess, the court
had absolutely no reason to doubt his ability to defend himself.
In sum, the court was presented with a bright, article, and
competent defendant insisting on his right to a speedy trial and
unwilling to either waive time or consider reappointment of the
same public defender and yet also insisting on the appointment of
another lawyer.  The court took reasonable measures to assure that
defendant was provided his pro. per. privileges, and as we pointed
out above, defendant does not assert there were any continuing
obstacles to his self-representation.  We conclude, therefore, that
under "'the totality of the facts and circumstances'" the court did
not abuse its discretion by denying defendant's request to withdraw
his waiver of his right to counsel and to appoint a new lawyer after
the jury was impaneled and the trial about to begin.  (Smith, supra,
112 Cal.App.3d at p. 51.)

(Slip Op. at p. 12-16.)

The United States Supreme Court has clearly established that a criminal defendant has a

constitutional right to counsel during criminal proceedings.  See Gideon v. Wainwright, 372 U.S.

335 (1963).  It is also "clearly established" that the Sixth Amendment right to counsel includes a

right to self-representation.  See Faretta v. California, 422 U.S. 806, 819 (1975).  "Although a

defendant need not himself have the skill and experience of a lawyer in order competently and

intelligently to choose self-representation, he should be made aware of the dangers and

disadvantages of self-representation, so that the record will establish that he knows what is is

doing and his choice is made with eyes open."  Id. at 835 (internal quotation marks and citation

omitted).  A defendant's decision to defend himself "is valid if the request is timely, not for

purposes of delay, unequivocal, and knowing and intelligent."  United States v. Erskine, 355 F.3d

1161, 1167 (9th Cir. 2004).  The purpose of the "knowing and voluntary" inquiry "is to

determine whether defendant actually does understand the significance and consequences of a

particular decision and whether the decision is uncoerced."  Godinez v. Moran, 509 U.S. 389,

401 n.12 (1993).

The issue in this Claim is not whether Petitioner's initial wavier of counsel was proper.

Instead, Claim I concerns Petitioner's right to counsel upon request after an initial valid waiver of

Petitioner's right to counsel had occurred.  In Menefield v. Borg, 881 F.2d 696, 700 (9th Cir.

1   1989), the Ninth Circuit stated:

2           [b]ecause the right to counsel is so central to our concepts of fair
            adjudication, we are reluctant to deny the practical fulfillment of
3           the right - even once waived - absent a compelling reason that will
            survive constitutional scrutiny.  [¶]  We are certainly unwilling to
4           deny counsel because of some conception that the defendant's
            initial decision to exercise his Faretta right and represent himself at
5           trial is a choice cast in stone.

6   However, "the right to counsel – once waived – is no longer absolute."  Id.  Accordingly, "[t]here

7   are times when the criminal justice system would be poorly served by allowing the defendant to

8   reverse course at the last minute and insist upon representation by counsel."  Id. (citations

9   omitted).  In Menefield, the Ninth Circuit compared such a request to when a defendant requests

10  a continuance on the eve of trial; it stated:

11          [w]hen, for example, for purposes of delay, criminal defendants
            have sought continuances on the eve of trial, we have refused to
12          disrupt the proceedings to accommodate their wishes.  In
            determining whether the trial court abused its discretion in refusing
13          to grant a continuance, courts of appeal have considered whether
            the continuance would adversely affect witnesses, counsel, the
14          court, and the government; whether there have been other
            continuances; whether legitimate reasons exist for the delay;
15          whether the delay is the defendant's fault; and whether a denial
            would prejudice the defendant.
16

17  Id. (citation omitted).  Thus, the timing of the request to rescind self-representation and appoint

18  counsel is important as stated by the Ninth Circuit:

19          [t]here is, however, a substantial practical distinction between
            delay on the even of trial and delay at the time of a post-trial
20          hearing.  Cf. United States v. Kennard, 799 F.2d 556 (9th Cir.
            1986) (per curiam) (absolute right to counsel in retrial after
21          defendant represented himself in initial trial).  Delay immediately
            prior to trial engenders significant potential for disruption of court
22          and witness scheduling.  Witnesses may have traveled long
            distances and may be unable to accommodate more than one trip.
23          Losing or substantially inconveniencing witnesses may prejudice
            the trial and the efficient administration of justice.  Shifting lengthy
24          trials may disrupt the court's docket.

25  Id. at 700-01.  In this case, the state/court would have been prejudiced by granting Petitioner's

26  request.  There were significant jury concerns because the jury had already been impaneled when

1  Petitioner made the request for counsel.  Furthermore, as the California Court of Appeal

2  explained, Petitioner wanted counsel to be appointed, but refused to "waive time" and accept a

3  continuance.  Accordingly, as noted by the Court of Appeal, the trial court was placed between "a

4  rock and a hard place."  The California Court of Appeal also explained that no competent lawyer

5  would be able to try such a serious and complex case without adequate time for preparation.  See,

6  e.g., John-Charles v. California, 2008 WL 5233589, at *24 n.3 (E.D. Cal. Dec. 15, 2008) ("It

7  only takes a realistic understanding of being a trial attorney to know that no attorney could be

8  expected to put on an effective defense without having prepared for it, or that an attorneys'

9  schedule would in all probability not permit the instant disruption which would be occasioned by

10  a trial of some days.").

11       For these reasons, there was sufficient prejudice to warrant denying Petitioner's last-

12  minute request for the appointment of counsel after he had validly waived counsel.  Petitioner is

13  not entitled to federal habeas relief on this Claim.

14       B.       Claim II

15       In Claim II, Petitioner argues that his rights to due process, self-representation,

16  meaningful access to the courts and the opportunity to prepare a defense were violated because

17  he was not given access to the CALCRIM jury instructions.  Petitioner raised this Claim on direct

18  appeal.  The California Court of Appeal rejected this Claim as follows:

19           Apparently defendant had access to CALJIC at the prison library,
             but not to the revised instructions now available in CALCRIM.  He
20           contends he was thereby deprived of his right to due process, self-
             representation, meaningful access to the courts, and the opportunity
21           to prepare a defense.  The record belies his assertion.

22           It appears that at the conclusion of the evidence, the court went
             over the jury instructions with the prosecutor and defendant.  The
23           following morning they put the relevant portions of their
             discussion on the record.  The prosecutor withdrew several
24           instructions, and defendant requested various instructions.  The
             court pointed out that defendant was using the old CALJIC because
25           the library did not have CALCRIM.  He recounted what he had
             told defendant as follows:  "And what I told you is just present the
26           CALJIC to the Court and I'll indicate what the comparable

10

1   CALCRIM section was.  [¶]  I indicated to you that that instruction
    under CALJIC is now obsolete because that language has been
2   subsumed within the general expert testimony instruction given in
    CALCRIM . . . ."  Defendant assented.  The court expressly
3   inquired of defendant:  "And I think I read it to you.  So you were
    satisfied with that language was – was incorporated into
4   CALCRIM, correct?"  Defendant replied, "Yes, your honor."

5   Defendant insists that this colloquy pertained to a single instruction
    and did not represent a stipulation to a wholesale adoption of the
6   procedure.  But the record reflects that the court carefully repeated
    the same procedure with the other instructions defendant requested.
7   For example, defendant requested the court to instruct the jury not
    to take a cue from the judge, to which the court stated:  "And I also
8   indicated that that is – that language has also been subsumed
    within another instruction that tells the jurors how they go about
9   their deliberations.  And I do tell them that they're not to take the
    cue from the Judge.  [¶]  In fact, that actually is in the opening
10  instructions as well that deal with how the jurors are to conduct
    their duties.  And I think that – read that language to you as well,
11  correct?"  Defendant agreed and stated expressly on the record that
    he was satisfied.

12
    Again the court recorded that defendant had requested an
13  instruction that touched upon the possibility of third party liability
    as to the possession counts and that "we actually doctored up the
14  child pornography instruction to tell the jurors that the defense
    position is that someone else committed those offenses . . . ."  The
15  court further stated that the instruction requires the prosecution to
    prove all the elements beyond a reasonable doubt.  The court
16  concluded once again, "And I believe during our informal
    discussions you did indicate you were satisfied with that, correct?"
17  And, for at least the third time, defendant agreed on the record.

18  The record substantiates the Attorney General's position that
    defendant stipulated to the procedure the court employed to assure
19  he had adequate access to the jury instructions; he had the
    opportunity to request, challenge, and revise those instructions; he
20  fully understood each of the instructions as they would be
    delivered; and he acquiesced in the process in which he fully and
21  intelligently participated.  His claim on appeal that this procedure
    violated his right to due process, etc., rings hollow on this very
22  express and candid record.

23  (Slip Op. at p. 18-20.)

24      The United States Supreme Court has held that the denial of access to a law library

25  cannot provide the basis for federal habeas corpus relief because no Supreme Court case clearly

26  establishes a *pro se* petitioner's constitutional right to law library access.  See Kane v. Garcia

1    Espitia, 546 U.S. 9, 10 (2005) (per curiam); see also Mendoza v. Carey, 449 F.3d 1065, 1070-71

2    (9th Cir. 2006) (explaining that Kane "held that the denial of access to a law library cannot

3    provide a basis for a *pro se* petitioner's habeas relief because no Supreme Court case clearly

4    establishes a *pro se* petitioner's constitutional right to law library access"). Therefore, in this

5    case, the state court decision denying this claim was not contrary to or an unreasonable

6    application fo federal law to warrant federal habeas relief.

7        Even assuming *arguendo* that Claim II raised a cognizable claim in this federal habeas

8    action, Petitioner failed to show that his constitutional rights were violated by lack of access to

9    the CALCRIM jury instructions. Petitioner relies on Bounds v. Smith, 430 U.S. 817 (1977) to

10    support this Claim. In Bounds, 430 U.S. at 821, the Supreme Court stated that "[p]risoners have

11    a constitutional right of access to the courts." Nevertheless, in Lewis v. Casey, 518 U.S. 343,

12    349 (1996), the Supreme Court stated "that an inmate alleging a violation of Bounds must show

13    actual injury." The court further explained that:

14            [b]ecause Bounds did not create an abstract, freestanding right to a
                law library or legal assistance, an inmate cannot establish relevant
15            actual injury simply by establishing that his prison's law library or
                legal assistance program is subpar in some theoretical sense. That
16            would be the precise analog of the healthy inmate claiming
                constitutional violation because of the inadequacy of the prison
17            infirmary. Insofar as the right vindicated by Bounds is concerned,
                meaningful access to the courts is the touchstone, and the inmate
18            therefore must go one step further and demonstrate that the alleged
                shortcomings in the library or legal assistance program hindered
19            his efforts to pursue a legal claim.

20    Id. at 351 (internal quotation marks and citation omitted).

21        Petitioner failed to demonstrate that he was unable to present a specific claim or defense

22    because of the law library's lack of access to the CALCRIM jury instructions. For example, as

23    quoted in part by the California Court of Appeal, the following colloquy took place at trial

24    between Petitioner and the trial judge:

25            THE COURT: Mr. Hertzig, there was several instructions that you
                requested that the Court give, correct?
26            THE DEFENDANT: Yes, your Honor.

1     THE COURT:  All right.  Let's go ahead and put those on the
      record.  [¶]  What was the first one, sir?
2     THE DEFENDANT:  Resolution of conflicts, expert testimony.
      THE COURT:  All right.
3     THE DEFENDANT:  I believe –
      THE COURT:  That's – you're actually looking at the old CALJIC,
4     correct?
      THE DEFENDANT:  Yes, your Honor.
5     THE COURT:  All right.  And I understand why you did that
      because apparently the library doesn't have CALCRIM.  And what
6     I told you is just present the CALJIC to the Court and I'll indicate
      what the comparable CALCRIM section was.  [¶]  I indicated to
7     you that that instruction under CALJIC is now obsolete because the
      language has been subsumed within the general expert testimony
8     instruction given in CALCRIM, okay?
      THE DEFENDANT:  Yeah.
9     THE COURT:  And I think I read it to you.  So you were satisfied
      with that language was – was incorporated into CALCRIM,
10    correct?
      THE DEFENDANT:  Yes, your Honor.
11    THE COURT:  All right.  What's the next one?
      THE DEFENDANT:  The next one was jury not to take the cue
12    from the Judge.
      THE COURT:  And I also indicated that that is – that language has
13    also been subsumed within another instruction that tells the jurors
      how they go about their deliberations.  And I do tell them that
14    they're not to take the cue from the Judge.  [¶]  In fact, that actually
      is in the opening instructions as well that deal with how the jurors
15    are to conduct their duties.  And I think that – read that language to
      you as well, correct?
16    THE DEFENDANT:  Yes, your Honor.
      THE COURT:  And you were satisfied with that, correct?
17    THE DEFENDANT:  Yes, I was, your Honor.
      THE COURT:  All right.  Go ahead.
18    THE DEFENDANT:  All instructions not necessarily applicable.
      THE COURT:  All right.  And I also indicated that that instruction
19    or that language was contained within other instructions, correct?
      THE DEFENDANT:  Yes, your Honor.
20

21    (Reporter's Tr. at p. 971-73.)  The above cited colloquy indicates that Petitioner was given the

22    opportunity by the trial court to compare the CALJIC to the CALCRIM instructions.  Petitioner

23    has not demonstrated that the purported lack of the CALCRIM jury instructions at the law library

24    hindered his efforts to pursue a legal claim.  See Lewis, 518 U.S. at 351.  Thus, even if the

25    Petitioner did assert a "clearly established" federal law in Claim II, he would not be entitled to

26    federal habeas relief.

13

C.  Claim III

In Claim III, Petitioner alleges that the trial court's denial of his motion to sever the child

molestation and unlawful intercourse charges from the possession of child pornography charges

violated his due process and fair trial rights.   The California Court of Appeal analyzed this Claim

in its opinion and stated the following:

> Although defendant did not make a formal pretrial motion to sever
> the pornography counts from the counts involving Laura and Kelly,
> the Attorney General appears to concede he adequately raised the
> issue in a pretrial colloquy with the trial court.  Defendant argued
> that showing the video clips found on the computer to the jury
> would be prejudicial because the victims themselves were not
> depicted in the videos.  We review the trial court's ruling for an
> abuse of discretion based on the showing made and facts known to
> the court at the time the motion is heard.  (People v. Ochoa (1998)
> 19 Cal.4th 353, 409 (Ochoa); People v. Musselwhite (1998) 17
> Cal.4th 1216, 1244.)
>
> There is no doubt a statutory and judicial preference for joint trials.
> (§ 954; Ochoa, supra, 19 Cal.4th at pp. 408-409.)  But section 954
> also provides that "the court in which a case is triable, in the
> interest of justice and for good cause shown, may, in its discretion
> order that the different offenses . . . be tried separately . . . ."
> Defendant must make a clear showing of prejudice to establish that
> the court abused its discretion by denying his request for severance
> or that "'joinder actually resulted in "gross unfairness" amounting
> to a denial of due process.'"  (People v. Mendoza (2000) 24 Cal.4th
> 130, 162 (Mendoza).)  Defendant has done neither.
>
> In determining whether there was an abuse of discretion at the time
> of the trial court's ruling, we consider the following factors:  1) the
> cross-admissibility of the evidence in separate trials; 2) whether
> certain charges are more likely to inflame the jury against the
> defendant; 3) whether a relatively weaker case is to be joined with
> a stronger case so that the "spillover" effect of the aggregate
> evidence might alter the outcome on some of the charges; and 4)
> whether joinder converts the matter into a capital case.  (People v.
> Gutierrez (2002) 28 Cal.4th 1083, 1120.)
>
> This remained a noncapital case with or without severance.  We
> agree with the Attorney General that this is not an instance where a
> weaker case is appended to a strong case so that the cumulative
> evidence secures a conviction the prosecution might otherwise be
> unable to prove.  While the evidence in the child molestation trial
> may have been a credibility contest as defendant contends, the
> interviews of the child victims, the pattern of deviant conduct, the
> physical evidence, and the testimony at trial provided by the three

14

victims, defendant's ex-wife, and medical experts provided compelling evidence of guilt.  Nor was the child pornography on the videos more likely to inflame the jury than the evidence of defendant's sexual exploitation of his vulnerable young relatives.

But most significantly, the trial court found, in essence, that the evidence would be cross-admissible in separate trials.  While "cross-admissibility is not the sine qua non of joint trials" (<u>Frank v. Superior Court</u> (1989) 48 Cal.3d 632, 641), cross-admissibility "ordinarily dispels any inference of prejudice" (<u>Mendoza</u>, <u>supra</u>, 24 Cal.4th at p. 161).

Defendant argued that his scorned ex-wife downloaded the pornographic videos onto the laptop computer.  In a separate trial on the possession of child pornography, therefore, evidence of his proclivity for young girls would be relevant to rebut his suggestion that his ex-wife possessed the pornography.  Moreover, in a separate trial on the molestation charges, the possession of the child pornography would establish a pattern of conduct, defendant's recurrent fascination with sex and children.  Thus, the evidence was not, as defendant argues, merely propensity evidence. It helped to establish a pattern of deviant behavior with the distinctive exploitation of children.  Accordingly, defendant suffered no prejudice from the trial court's denial fo the severance motion and has not sustained his burden of proving an abuse of discretion.

"Having concluded that defendant suffered no prejudice from the joint trial . . ., we also reject his contention that the joint trial violated his due process rights.  [Citation ['Improper joinder does not, in itself, violate the Constitution' but rather 'rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial']; citation.]"  (<u>People v. Sapp</u> (2003) 31 Cal.4th 240, 259-260.)

(Slip Op. at p. 5-7.)

First, this Claim is non-cognizable to the extent that Petitioner relies on state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68, 1991).  Nevertheless, in <u>United States v. Lane</u>, 474 U.S. 438 (1986), the Supreme Court stated that misjoinder of charges rises to the level of a federal constitutional violation "if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."  <u>Id.</u> at 446 n.8.  Error "involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'"  <u>Id.</u> at 449

15

1   (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)).  Federal habeas relief is

2   available for improper consolidation only if the "simultaneous trial of more than one offense . . .

3   actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due

4   process." Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991); see also Davis v.

5   Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of prejudice is reached only if

6   the impermissible joinder had a substantial and injurious effect or influence in determining the

7   jury's verdict.") (internal quotation marks and citation omitted).  In evaluating the prejudice

8   suffered by the Petitioner, the focus is "particularly on [the] cross-admissibility of evidence and

9   the danger of 'spillover' from one charge to another, especially where one charge or set of

10   charges is weaker than another." Id.  The reason that there is danger in this situation "is that it is

11   difficult for a jury to compartmentalize the damaging information." Sandoval v. Calderon, 241

12   F.3d 765, 772 (9th Cir. 2000).

13        Petitioner is not entitled to federal habeas relief on this Claim because he has not shown

14   that the joinder of charges into one trial had a substantial or injurious effect or influence in

15   determining the jury's verdict.  This was not a case whereby the prosecution included the child

16   pornography charges into this matter to support the "weaker" child molestation and unlawful

17   sexual intercourse charges.  With respect to the five counts of lewd and lascivious acts with a

18   child under the age of 14 and one count of unlawful sexual intercourse, the prosecution's case

19   was not "weak."  By way of example, the prosecution presented the testimony of Laura[3] who

20   provided testimony with respect to the counts against Petitioner of lewd and lascivious acts with

21   a child under the age of 14 as they related to her (Counts I-III).  (See Reporter's Tr. at 341-53.)

22   The medical exam of this young victim also supported that she had some trauma to her genital

23   area.  (See Reporter's Tr. at p. 694-95.)  The Petitioner even admitted during his opening

24   statement that he had a sexual relationship with Kelly from the time she was fifteen to eighteen

25

26        [3] As with the California Court of Appeal, the victims names have been altered to protect their anonymity.

and was the father of her child (Petitioner and Kelly had twins but one of the twins passed away

before Petitioner's trial).  (See Reporter's Tr. at p. 180.)  Furthermore, the prosecution presented

evidence to support its two charges of lewd and lascivious acts with a child under the age of 14

as related to Kelly and incidents occurring in 1998.  This evidence included Kelly's statements to

police in 1998.  (See Reporter's Tr. at p. 499.)  Additionally, during a medical examination, in

1998, the prosecution presented evidence that Kelly told the medical examiner that Petitioner had

ejaculated on her (see Reporter's Tr. at p. 820.) and that there was evidence of a healed injury

consistent with a penetrating injury in Kelly's genital area.  (See Reporter's Tr. at p. 826.)

Furthermore, the particular focus on whether denying a motion to sever violates a

petitioner's due process rights is on the cross-admissibility of the evidence.  See Davis, 384 F.3d

at 638.  As noted by the California Court of Appeal, Petitioner argued at trial that his ex-wife

downloaded the child pornography onto the laptop computer in an effort to frame Petitioner.

Thus, evidence of his purported molestation of young girls would be relevant to rebut his

suggestion that his ex-wife framed him with respect to the possession of child pornography

charges.  Evidence of molestation and possessing child pornography illustrated Petitioner's

behavior regarding the sexual exploitation of children.  For the foregoing reasons, Petitioner is

not entitled to federal habeas relief on this Claim.

D.  Claim IV

In Claim IV, Petitioner asserts that his due process and equal protection rights were

violated when "the prosecution file [sic] an in limine motion to introduce evidence of petitioner's

uncharged 1996 molestation of [Joanne S.] as evidence of his propensity to commit child sexual

molestation, pursuant to Evidence Code 1108.  The trial court overruled petitioner's objection

and allowed the evidence . . . .  The trial court ruled that evidence of the possession of child

pornography was also admissible evidence of petitioner's propensity to commit the charged sex

crimes, pursuant to Evidence Code 1108."  (Pet'r's Pet. at p. 25-26.)  On direct appeal, the

California Court of Appeal stated the following with respect to this Claim:

Defendant complains that evidence he fondled his friend's younger sister and possessed child pornography was erroneously admitted to show his propensity to molest children.  His challenge to the constitutionality of Evidence Code section 1108 has been soundly rebuffed.  (People v. Falsetta (1999) 21 Cal.4th 903, 917.)  He further contends that the trial court abused its discretion by finding its probative value was not substantially outweighed by the possibility that it would consume an undue amount of time, create a substantial danger of undue prejudice or confusion of the issues, or mislead the jury.  (Evid. Code, § 352, People v. Fitch (1997) 55 Cal.App.4th 172, 183.)

Defendant insists that his fondling of Joanne S., the 14-year-old sister of his friend, bore no similarity to the type of lewd and lascivious conduct with which he was charged.  No so.  While his aggression toward this young girl might appear tame compared to his abuse of his nine-year-old sister two years later and six-year-old daughter nine years later, it begins a pattern of forcing himself on young girls and using them for his sexual gratification.  Joanne testified that defendant's advances were unwelcome and she immediately reported his forced attempted at "copping a feel" to the police.  While it is true that defendant was only 18 years old at the time of this first reported incident, just two years passed before he began his exploitation of his sister and therefore the incident was not too remote in time to diminish its probative value.  Because there was sufficient similarity between the uncharged misconduct and the present offenses, and the chance for confusing the jury or consuming an inordinate amount of time was remote, we conclude the court did not abuse its discretion by admitting Joanne's testimony.

Nor did the admission of the evidence that defendant possessed child pornography constitute an abuse of discretion.  Since, as we concluded above, the molestation and possession charges were properly joined, the pornographic video images were admissible to prove a violation of section 311.11.  Thus they were not, as defendant seems to suggest, merely admitted to prove a propensity to molest children.  If he desired a limiting instruction, he should have requested one.

(Slip Op. at p. 16-18.)

The Supreme Court has yet to rule on whether propensity evidence admitted in a criminal trial pursuant to state law violates the Due Process Clause.  See Estelle, 502 U.S. at 75 n.5 ("[W]e express no opinion on whether state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime.").  Accordingly, since the Supreme Court has not clearly established that use of propensity evidence

18

1   in a criminal trial violates due process, a state court's decision on the matter cannot be contrary

2   to or an unreasonable application of Supreme Court precedent under AEDPA.  See Alberni v.

3   McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006) (denying due process claim upon the use of

4   propensity evidence for want of a "clearly established" rule from the Supreme Court); see also

5   Mejia v. Garcia, 534 F.3d 1036, 1046 (9th Cir. 2008).  Thus, Petitioner is not entitled to relief on

6   Claim IV to the extent he bases this Claim on the Due Process Clause.[4]

7          Petitioner also asserts that the admission of the propensity evidence violated the Equal

8   Protection Clause.  Specifically, Petitioner argues that, "[e]vidence Code section 1108 treats

9   criminal defendants accused of child molestation differently from all other criminal defendants

10  except domestic violence offenders, by allowing evidence of prior acts to be admitted for all

11  purposes, including showing a propensity to commit the charged crime."  (Pet'r's Pet. at p. 26.)

12         "The Equal Protection Clause of the Fourteenth Amendment commands that no State

13

_____

14         [4] It is also worth noting that in Mejia the Ninth Circuit stated the following:

15                 Our holding in United States v. LeMay, 260 F.3d 1018 (9th Cir.
                   2001), supports our conclusion that admission of the propensity
16                 evidence did not violate Mejia's due process rights.  In LeMay, on
                   direct appeal rather than on collateral review, we upheld
17                 introduction of evidence under Federal Rule of Evidence 414 –
                   which is roughly analogous to California Evidence Rule 1108,
18                 allowing former acts evidence with respect to allegations of child
                   molestation – as being consistent with due process requirements.
19                 We noted that the Rule 414 evidence must pass the requirements of
                   Rules 402 and 403, the federal analogs to California Evidence Rule
20                 352 under which Norma's testimony was admitted.  We reasoned
                   that due process requires that admission of prejudicial evidence not
21                 render a trial fundamentally unfair, which Rule 402, ensuring
                   relevance, and Rule 403, guarding against overly prejudicial
22                 evidence, together guarantee.  California Evidence Rule 352
                   establishes a similar threshold for the propensity evidence
23                 introduced at Mejia's trial, suggesting that under LeMay, Rule 352,
                   like Federal Rules 402 and 403, safeguards due process and
24                 protected Mejia's trial from fundamental unfairness.

25  Mejia, 534 F.3d at 1047 n.5.  Thus, even if the merits of this Claim could be reached with respect
    to a prospective due process violation, the Claim would still not merit federal habeas relief for
26  the reasons stated in Mejia.

1  shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

2  essentially a direction that all persons similarly situation should be treated alike." City of

3  Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S.

4  202, 216 (1982)).  The United States Supreme Court has articulated three standards applicable to

5  equal protection analysis:  strict scrutiny, heightened scrutiny, and rational basis review.  See id.

6  at 439-42.  Rational basis review states that the legislation is valid if the classification drawn by

7  the statute is rationally related to a legitimate state interest.  See id. at p. 440.  On the other side

8  of the spectrum, "equal protection analysis requires strict scrutiny of a legislative classification

9  only when the classification impermissibly interferes with the exercise of a fundamental right or

10  operates at a peculiar disadvantage of a suspect class."  Massachusetts Bd. of Retirement v.

11  Murgia, 427 U.S. 307, 312 (1976) (citing San Antonio Sch. Dist. v. Rodriguez, 411 U.S. 1, 16

12  (1973)).  Under strict scrutiny, classifications imposed by the government are constitutional only

13  if they are narrowly tailored to further compelling governmental interests.  See Grutter v.

14  Bollinger, 539 U.S. 306, 326 (2003) (citation omitted).

15          In LeMay, 260 F.3d at 1020, the Ninth Circuit analyzed whether Federal Rule of

16  Evidence 414 violated the Equal Protection Clause.  Federal Rule of Evidence 414 states that

17  "[i]n a criminal case in which the defendant is accused of an offense of child molestation,

18  evidence of the defendant's commission of another offense or offenses of child molestation is

19  admissible, and may be considered for its bearing on any matter to which it is relevant."  The

20  Ninth Circuit concluded that the defendant's equal protection claim falls within rational basis

21  review.  See id. at 1030-31.  The Ninth Circuit stated that the defendant had no fundamental right

22  to have a trial free from relevant propensity evidence that is not unduly prejudicial and that sex

23  offenders were not a suspect class.  See id. at 1030.  Ultimately, the Ninth Circuit concluded that

24  Rule 414 passed rational basis review because prosecuting crime was a legitimate governmental

25  interest and Rule 414 furthered that interest "by allowing prosecutors to introduce relevant

26  evidence to help convict sex offenders."  Id. at 1031.

1    Petitioner has not shown that California Evidence Code § 1108 deprived him of a

2    fundamental right, see supra note 4, and LeMay illustrates that sex offenders are not a suspect

3    class.  Therefore, the appropriate standard of scrutiny for this equal protection argument is

4    "rational basis review."  Prosecuting crime effectively is a legitimate governmental interest.

5    See LeMay, 260 F.3d at 1031.  California chose to treat admission of evidence against sex

6    offenders differently in part because of "the serious and secretive nature of sex crimes and the

7    often resulting credibility contest at trial."  People v. Falsetta, 21 Cal.4th 903, 912, 89 Cal. Rptr.

8    2d 847, 986 P.2d 182 (1999).  This is a rational basis for the distinction.  Thus, application of §

9    1108 did not violate Petitioner's equal protection rights.  Petitioner is not entitled to federal

10   habeas relief on this Claim to the extent he relies on the Equal Protection Clause as well.

11                                VI.  PETITIONER'S REQUESTS

12       A.  Request for an Order to Show Cause

13       Petitioner requests "an order to show cause" in his prayer for relief.  (Pet'r's Pet. at p. 27.)

14   Respondent answered the Petition on June 9, 2009.  Accordingly, Petitioner's request for an

15   order to show cause is denied as moot.

16       B.  Request for the Appointment of Counsel

17       Petitioner also requests the appointment of counsel.  There currently exists no absolute

18   right to the appointment of counsel in habeas proceedings.  See, e.g., Nevius v. Sumner, 105 F.3d

19   453, 460 (9th Cir. 1996).  However, 18 U.S.C. § 3006A authorizes the appointment of counsel at

20   any stage of the case "if the interests of justice so require."  In the present case, the interests of

21   justice do not so require to warrant the appointment of counsel.  Accordingly, Petitioner's request

22   for the appointment of counsel is denied.

23       C.  Request for an Evidentiary Hearing

24       Finally, Petitioner requests an evidentiary hearing on his Claims.  (See Pet'r's Traverse at

25   p. 13.)  Pursuant to 28 U.S.C. § 2254(e)(2), a district court presented with a request for an

26   evidentiary hearing must first determine whether a factual basis exists in the record to support a

                                              21

1  petitioner's claims and, if not, whether a factual basis exists in the record to support a petitioner's

2  claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme,

3  187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir.

4  2005).  A petitioner requesting an evidentiary hearing must also demonstrate that he has

5  presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citations omitted).  To show

6  that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would

7  entitled him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation

8  marks and citation omitted).  In this case, an evidentiary hearing is not warranted for the reasons

9  stated in supra Part V.  Petitioner failed to demonstrate that he has a colorable claim for federal

10  habeas relief.

11                                   VII.  CONCLUSION

12        For the foregoing reasons, IT IS HEREBY ORDERED that:

13        1.      Petitioner's request for an order to show cause is DENIED AS MOOT;

14        2.      Petitioner's request for the appointment of counsel is DENIED; and

15        3.      Petitioner's request for an evidentiary hearing is DENIED.

16        IT IS HEREBY RECOMMENDED that Petitioner's Petition for writ of habeas corpus be

17  DENIED.

18          These findings and recommendations are submitted to the United States District Judge

19  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

20  after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within seven days after service of the objections.  The parties are

24  advised that failure to file objections within the specified time may waive the right to appeal the

25  District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

26  elects to file, petitioner may address whether a certificate of appealability should issue in the

event he elects to file an appeal from the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  October 12, 2010

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE